IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| WILLIAM T. WULIGER, RECEIVER | : | CASE NO. 1:05CV0108 |
| | : | |
| Plaintiff, | : | Judge Katz |
| | : | |
| vs. | : | |
| | : | |
| OFFICE OF THE COMPTROLLER | : | |
| OF THE CURRENCY, *et al.* | : | |
| | : | |
| Defendants. | : | |

---

## PLAINTIFF WILLIAM T. WULIGER, RECEIVER'S, CROSS-MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT

---

Plaintiff, William T. Wuliger, Receiver (the "Receiver"), through counsel, moves this Court for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  No issues of fact remain, and the Receiver is entitled to summary judgment as a matter of law.  The Receiver also requests this Court to issue an Order requiring the OCC to produce the documents requested by the Receiver.[1]

---

[1]    On May 27, 2005, the Receiver filed a combined Memorandum in Opposition to the OCC's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, and Cross-Motion for Summary Judgment (Doc. #33).  On June 2, 2005, the clerk's office requested counsel for the Receiver to re-file his Cross-Motion for Summary Judgment as a separate document.  This filing represents the Receiver's compliance with that request.

Respectfully submitted,


s/Richard S. Wayne
RICHARD S. WAYNE (0022390)
THOMAS P. GLASS (0062382)
NICOLE M. LUNDRIGAN (0075146)
STRAUSS & TROY, L.P.A.
The Federal Reserve Building
150 East Fourth Street
Cincinnati, OH 45202-4018
513.621.2120
513.629.9426 (fax)
E-mail: rswayne@strausstroy.com

Attorneys for Plaintiff
William T. Wuliger, Receiver
in KeyBank and Liberty Bank Cases


s/Wallace A. Showman
WALLACE A. SHOWMAN
E-mail: was@showmanlaw.com
WALLACE A. SHOWMAN LLP
1350 Avenue of the Americas, 29th Floor
New York, NY 10019
212.265.8600
212.581.8958 (fax)

Attorney for Plaintiff
William T. Wuliger, Receiver
in KeyBank, Liberty Bank, and Star Bank Cases

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES .......................................................................................................iii

STATEMENT OF ISSUES PRESENTED....................................................................................viii

I.     INTRODUCTION ......................................................................................................1

II.    STATEMENT OF FACTS ........................................................................................3

III.   SUMMARY OF ARGUMENT ................................................................................10

IV.   ARGUMENT............................................................................................................11

       A.     THERE ARE NO GENUINE ISSUES OF MATERIAL FACT THAT
              THE OCC EXCEEDED ITS DELEGATED AUTHORITY IN
              IMPLEMENTING 12 C.F.R. §21.11(k).................................................................11

              1.     5 U.S.C. §301, The General Housekeeping Statute, Did Not
                      Authorize the OCC to Implement 12 C.F.R. § 21.11(k)...............................12

              2.     31 U.S.C. §5318 Did Not Authorize the OCC to Implement 12
                      C.F.R. §21.11(k) .......................................................................................15

                    (a)     The Express Authority Provided By 31 U.S.C. §5318 .....................15

                    (b)     The Congressional Intent and Legislative History of 31
                               U.S.C. § 5318(g)(2) ...........................................................................19

       B.     THERE ARE NO GENUINE ISSUES OF MATERIAL FACT THAT 12
              C.F.R. §21.11(k) VIOLATES THE SEPARATION OF POWERS
              DOCTRINE OF THE FEDERAL CONSTITUTION ...............................................26

              1.     This Court Should Construe §5318 in a Manner Which Does not
                      Interfere with the Power and Province of the Judiciary to Control
                      Discovery; Construction of §5318 in a Constitutional Manner
                      Requires A Finding that the OCC's Regulation is Unenforceable................27

               2.     If the Court Determines that Congress Intended, Through §5318, to
                      Prohibit the Disclosure of SARs in Judicial Proceedings, Both the
                      Statute and the Regulation Impermissibly Invade the Province of
                      the Judiciary and are Unconstitutional Under the Doctrine of
                      Separation of Powers .................................................................................30

V.     CONCLUSION.................................................................................................................35

# TABLE OF AUTHORITIES

**Page**

<u>**Cases**</u>

*Ammex, Inc. v. U.S.*, 367 F.3d 530 (6th Cir. 2004) ...........................................................11

*Atchison, T. & S. F. Ry. Co. v. I. C. C.*, 607 F.2d 1199 (7th Cir. 1979) .........................................11

*Bowen v. Georgetown University Hosp.*, 488 U.S. 204 (1988) ....................................................12

*Brendsel v. Office of Federal Housing Enterprise Oversight*, 339 F. Supp.2d 52 (D.D.C. 2004) ...........................................................................17, 18, 19

*Buckley v. Valeo*, 424 U.S. 1 (1976) ...........................................................................32

*Campbell v. Galeno Chemical Co.*, 281 U.S. 599 (1930)...........................................11, 12, 19

*Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) ...........................................................................17, 19, 26

*Chrysler Corp. v. Brown*, 441 U.S. 281 (1979) ....................................................................13

*City of New York v. Train,* 494 F.2d 1033 (D.C. Cir. 1974) ..........................................................20

*Concrete Pipe and Products of California, Inc. v. Construction Laborers Pension Trust for Southern California*, 508 U.S. 602 (1993) ........................................................27

*Dawson Chemical Co. v. Rohm and Haas Co.*, 448 U.S. 176 (1980) ...........................................20

*Ex. Rel. O'Keefe v. McDonnell Douglas Corporation*, 132 F.3d 1252 (8th Cir. 1998)........................................................................13

*Exxon Shipping Co. v. United State Dept. of Interior*, 34 F.3d 774 (9th Cir. 1994).................13, 35

*FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120 (2000) ..............................................26

*Forstmann Leff Associates, Inc. v. American Brands, Inc.,* 1991 WL 168002 (S.D.N.Y. 1991) ........................................................................33

*Hadix v. Johnson*, 144 F.3d 925 (6th Cir. 1998)........................................................................27

*In re Bankers Trust Co.*, 61 F.3d 465 (6th Cir. 1995)...................13, 14, 18, 19, 26, 27, 30, 34, 35

*In re Cincinnati Radiation Litig.*, 874 F. Supp. 796 (S.D. Ohio 1995) .........................................13

*In re Griffith*, 206 F.3d 1389 (11th Cir. 2000)................................................................26

*International R. Co. v. Davidson*, 257 U.S. 506 (1922) ....................................................12

*Liberte Capital Group, LLC v. James Capwill, et al.*, Case No. 5:99CV818 (N.D. Ohio 2000).......................................................................................................................3

*Lopez v. First Union Nat. Bank*, 931 F. Supp. 860 (S.D.Fla. 1996) ...............................24

*Loving v. U.S.*, 517 U.S. 748, 757 (1996) ........................................................................33

*McElya v. Sterling Med. Inc.*, 129 F.R.D. 510 (W.D. Tenn. 1990) .................................13

*Merchants Nat. Bank & Trust Co. of Fargo v. U. S.*, 41 F.R.D. 266 (D.N.D. 1966).....................................................................................................14, 27, 29, 32, 33

*Mistretta v. United States,* 488 U.S. 361 (1989) ............................................................30

*NLRB v. Capitol Fish Co.*, 294 F.2d 868, 875 (5th Cir. 1961) .....................................13

*Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50 (1982) ...........................................................................................................30, 31, 32

*Pan Am. World Airways, Inc. v. C. A. B.,* 380 F.2d 770 (2d Cir. 1967) ......................20

*Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211 (1995).................................................33, 34

*Ratzlaf v. U.S.*, 510 U.S. 135 (1994)................................................................................20

*Reed v. Prudential Ins. Co. of America*, 849 F.2d 1473 (6th Cir. 1988) .......................11

*Resolution Trust Corp. v. Deloitte & Touche*, 145 F.R.D. 108 (D. Colo. 1992)....................................................................................................................33

*Robbins v. Wilkie*, 289 F. Supp.2d 1307 (D.C. Wy. 2003) ............................................12

*Sperandeo v. Milk Drivers & Dairy Employees Local Union No.* 537, 334 F.2d 381 (10th Cir.1964) ..................................................................................15, 33, 34

*TeamBank, N.A. v. McClure,* 279 F.3d 614 (8th Cir. 2002) .........................................11

*U.S. ex rel. Roby v. Boeing Co.*, 189 F.R.D. 512 (S.D. Ohio 1999) .......................14, 31

*U.S. v. $633,021.67 in U.S. Currency*, 42 F. Supp. 528 (N.D.Ga. 1993) .....................20

*U.S. v. Robinson*, 367 F.3d 278 (5th Cir. 2004)....................................................................11

*United States v. Reynolds*, 345 U.S. 1 (1953))........................................................28, 33

*United States v. Will,* 449 U.S. 200 (1980).........................................................................31

*Weil v. Long Island Sav. Bank*, 195 F.Supp.2d 383 (E.D.N.Y. 2001)............................26

*Wuliger v. Liberty Bank, N.A.*, Case No. 3:02 CV 1378 (N.D. Ohio March 4, 2004)....................................................................................................................................3

*Wuliger v. KeyBank Natl. Ass'n*, Case no. 1:02 CV 2160 ..............................................3

*Wuliger v. Star Bank, N.A.,* Case No. 1:02 CV 1513........................................................3

## Administrative Decisions

OCC Interpretive Letter #978  ...............................................................................................8

OCC Interpretive Letter #1012 ..............................................................................................8

## Constitutional Provisions, Statutes, Bills, and Public Laws

5 U.S.C. § 301, *et seq.*............................................................11, 12, 13, 14, 26, 35

12 U.S.C. § 4501.....................................................................................................................18

12 U.S.C. § 4513.....................................................................................................................18

12 U.S.C. § 4518.....................................................................................................................18

31 U.S.C. § 5318.......................................................................................................... *passim*

42 U.S.C. § 1306.....................................................................................................................28

H.R. 26 ........................................................................................................................20, 21, 24

H.R. 5334 ....................................................................................................................22, 23, 24

H.R. 6048 ....................................................................................................................22, 23, 24

S. 543  ..........................................................................................................................20, 21, 22

S. 630  ..................................................................................................................................20, 21

S. 2733  ........................................................................................................................22, 23, 24

Public Law No. 102-242 ........................................................................22

Public Law No. 102-550 ........................................................................24

Public Law No. 103-325 ........................................................................25

Public Law No. 107-56 .........................................................................24

Public Law No. 108-159 ........................................................................24

Public Law No. 108-458 ........................................................................24

**<u>Administrative Regulations</u>**

12 C.F.R. § 4.31 ...........................................................................3, 4, 5

12 C.F.R. § 4.32 ...............................................................................3

12 C.F.R. §4.33 ...........................................................................5, 6, 8

12 C.F.R. §4.35 ...........................................................................6, 7, 8

12 C.F.R. §4.37 ...............................................................................5

12 C.F.R. § 21.11 .................................................................... *passim*

**<u>Rules</u>**

Fed. R. Civ. P. 34 .....................................................................1, 3, 14, 26

Fed. R. Civ. P. 45 .......................................................................1, 14

## <u>STATEMENT OF ISSUES PRESENTED</u>

I.     Whether the OCC exceeded its limited rulemaking authority through its promulgation of 12 C.F.R. § 21.11(k), rendering the regulation invalid.

II.    Whether 31 U.S.C. § 5318(g)(2) and/or 12 C.F.R. § 21.11(k) impermissibly invade the province of the judiciary in contravention of the doctrine of separation of powers, and are therefore unconstitutional and unenforceable.

# I. <u>INTRODUCTION</u>

This case arises from the Receiver's effort to obtain important information pursuant to Civil Rule 34 during discovery in the three cases filed by the Receiver against Star Bank, Key Bank and Liberty Bank (the "Banks").  Specifically, the Receiver sought from the Banks the production of Suspicious Activity Reports ("SARs") and documents related to the filing of SARs.  The Banks, citing 12 C.F.R. §21.11(k), refused to produce the requested documents.  The Receiver also made a request for the same documents from the Office of the Comptroller of the Currency ("OCC"), which the OCC summarily denied without making a considered judgment. The Receiver filed the present action claiming that the OCC's action violated the Administrative Procedure Act ("APA") and that §21.11(k) is invalid and/or unconstitutional.

This filing represents the Receiver's Cross-Motion for Summary Judgment. It addresses the serious legal questions raised by the OCC's promulgation and enforcement of 12 C.F.R §21.11(k), which purports to override the Federal Rules of Civil Procedure and divest this Court of its statutory and inherent power to govern discovery.  The plain language of the OCC's enabling statute and the legislative history thereof establish that Congress did not intend to preclude the disclosure of SARs to anyone *other than the person involved in the suspicious transaction,* and that when promulgating §21.11(k), the OCC acted outside the scope of its delegated authority, rendering that Regulation invalid.  Further, the OCC's promulgation of §21.11(k), which encroaches on the authority of Civil Rules 34 and 45, raises serious constitutional questions—which when answered establish the unconstitutionality of that Regulation.

Statutory interpretation and constitutional questions, such as those presented by this Motion, are legal questions for this Court to determine.  The Receiver respectfully requests that

this Court to grant his Cross-Motion for Summary Judgment, and issue an Order requiring the

OCC to produce the requested documents.

## II.  <u>STATEMENT OF FACTS</u>

The Receiver is the Plaintiff is three separate actions against Defendants Star Bank, KeyBank and Liberty Bank (the "Bank Cases"). Complaint, ¶1. As the Court is well-aware, James Capwill ("Capwill") was involved in a scheme to steal tens of millions of dollars from investors. *Liberte Capital Group, LLC v. James Capwill, et al*., Case No. 5:99CV818, Memorandum Opinion 8/1/00, at pp.10-11 (N.D. Ohio 2000). In the Bank Cases, the Receiver alleges that Star Bank, KeyBank and Liberty Bank (the "Bank Defendants") participated, assisted or were willfully blind to the fraud perpetrated by Capwill. *See* Complaints in the Bank Cases: *William T. Wuliger, Receiver v. Liberty Bank, N.A.*, Case No. 5:02 CV 1378; *William T. Wuliger, Receiver v. KeyBank Natl. Assn.*, Case No. 1:02 CV 2160; *William T. Wuliger, Receiver v. Star Bank, N.A.,* Case No. 1:02 CV 1513.  The Court has already found that Capwill stole at least $54 million from investors represented by the Receiver. *Liberte Capital Group, LLC v. James Capwill, et al*., Case No. 5:99CV818, Memorandum Opinion 8/1/00, at pp.10-11 (N.D. Ohio 2000).  The Receiver is seeking to recover from the Bank Defendants the money that Capwill, with the assistance and participation of the Banks, stole from investors. *See* the Bank Cases.

In the course of conducting discovery in the Bank Cases, on August 9, 2004, the Receiver requested that the OCC produce certain non-public information[2], including SARs, pursuant to 12 C.F.R. § 4.31, *et seq.*[3]  Affidavit of Nicole Lundrigan, ¶2, and Exs. 1, 2, 3, and 4

---

[2]  The OCC defines "non-public information" to include SARS, among other things.  12 C.F.R. 4.32(b)(1)(vii).

[3]  The Receiver also served discovery requests on the Banks pursuant to Fed.R.Civ.P. 34, requesting, among other things, SARs and documents related to the filing of SARs.  The Banks refused to produce these documents citing OCC regulation 12 C.F.R. § 21.11(k) and 31 U.S.C. § 5318(g)(2).

to Complaint (Aff. attached as Exhibit 1 to Doc. #33[4]) (hereinafter "Lundrigan Aff., ¶___").

Section 4.31 provides, in relevant part:

> § 4.31 Purpose and scope.
>
> (a) Purpose. The purposes of this subpart are to:
>
>> (1) Afford an orderly mechanism for the OCC to process expeditiously requests for non-public OCC information; to address the release of non-public OCC information without a request; and, when appropriate, for the OCC to assert evidentiary privileges in litigation;
>>
>> (2) Recognize the public's interest in obtaining access to relevant and necessary information and the countervailing public interest of maintaining the effectiveness of the OCC supervisory process and appropriate confidentiality of OCC supervisory information;
>>
>> (3) Ensure that the OCC's information is used in a manner that supports the public interest and the interests of the OCC;
>>
>> (4) Ensure that OCC resources are used in the most efficient manner consistent with the OCC's statutory mission;
>>
>> (5) Minimize burden on national banks, the public, and the OCC;
>>
>> (6) Limit the expenditure of government resources for private purposes; and
>>
>> (7) Maintain the OCC's impartiality among private litigants.
>
> (b) Scope.
>
>> (1) This subpart applies to requests for, and dissemination of, non-public OCC information, including requests for records or testimony arising out of civil lawsuits and administrative proceedings to which the OCC is not a party and the release of non-public OCC information without a specific request. Lawsuits and administrative proceedings to which the OCC is

---

[4]      The exhibits referenced herein are identical to those attached to the Receiver's Memorandum in Opposition to the OCC Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, and Cross-Motion for Summary Judgment, filed on May 27, 2004 (Doc. #33).  As such, these exhibits are not attached to this filing, and all references herein are to the exhibits attached to Document #33.

not a party include proceedings in which a Federal agency is a party in opposition to the private requester.

(2) This subpart does not apply to:

(i) A request for a record or testimony in a proceeding in which the OCC is a party; or

(ii) A request for a record that is required to be disclosed under the Freedom of Information Act (FOIA) (5 U.S.C. 552), as described in § 4.12.

(3) A request for a record or testimony made by the Board of Governors of the Federal Reserve System, the Federal Deposit Insurance Corporation, a government agency of the United States or a foreign government, a state agency with authority to investigate violations of criminal law, or a state bank regulatory agency is governed solely by § 4.37(c).

When requesting non-public information from the OCC, the requesting party must comply with 12 C.F.R. § 4.33, which provides in relevant part:

§ 4.33 Requirements for a request of records or testimony.

(a) Generally—

(1) Form of request. A person seeking non-public OCC information must submit a request in writing to the OCC. The requester must explain, in as detailed a description as is necessary under the circumstances, the bases for the request and how the requested non-public OCC information relates to the issues in the lawsuit or matter.

(2) Expedited request. A requester seeking a response in less than 60 days must explain why the request was not submitted earlier and why the OCC should expedite the request.

(3) Request arising from adversarial matters. Where the requested information is to be used in connection with an adversarial matter:

(i) The OCC generally will require that the lawsuit or administrative action has been filed before it will consider the request;

- 5 -

(ii) The request must include:

    (A) A copy of the complaint or other pleading setting forth the assertions in the case;

    (B) The caption and docket number of the case;

    (C) The name, address, and phone number of counsel to each party in the case; and

    (D) A description of any prior judicial decisions or pending motions in the case that may bear on the asserted relevance of the requested information;

(iii) The request must also:

    (A) Show that the information is relevant to the purpose for which it is sought;

    (B) Show that other evidence reasonably suited to the requester's needs is not available from any other source;

    (C) Show that the need for the information outweighs the public interest considerations in maintaining the confidentiality of the OCC information and outweighs the burden on the OCC to produce the information;

    (D) Explain how the issues in the case and the status of the case warrant that the OCC allow disclosure; and

    (E) Identify any other issue that may bear on the question of waiver of privilege by the OCC.

(b) Request for records. If the request is for a record, the requester must adequately describe the record or records sought by type and date.

Section 4.35 sets the ground-rules for the OCC's consideration of requests for non-public information, and provides in relevant part:

§ 4.35 Consideration of requests.

(a) In general--

(1) OCC discretion. The OCC decides whether to release non-public OCC information based on its weighing of all appropriate factors including the requestor's fulfilling of the requirements enumerated in § 4.33. Each decision is at the sole discretion of the Comptroller or the Comptroller's delegate and is a final agency decision. OCC action on a request for non-public OCC information exhausts administrative remedies for discovery of the information.

(2) Bases for denial. The OCC may deny a request for non-public OCC information for reasons that include the following:

(i) The requester was unsuccessful in showing that the information is relevant to the pending matter;

(ii) The requester seeks testimony and the requestor did not show a compelling need for the information;

(iii) The request arises from an adversarial matter and other evidence reasonably suited to the requester's need is available from another source;

(iv) A lawsuit or administrative action has not yet been filed and the request was made in connection with potential litigation; or

(v) The production of the information would be contrary to the public interest or unduly burdensome to the OCC.

(3) Additional information. A requester must submit a complete request. The OCC may require the requester to provide additional information to complete a request. Consistent with the purposes stated in § 4.31, the OCC may inquire into the circumstances of any case underlying the request and rely on sources of information other than the requester, including other parties.

***

(c) Release of non-public OCC information by others. In appropriate cases, the OCC may respond to a request for information by authorizing a party to the case who is in possession of non-public OCC information to release the information to the requester. An OCC authorization to release records does not preclude the party in possession from asserting its own privilege, arguing that the records are not relevant, or asserting any other argument for which it has standing to protect the records from release.

- 7 -

The Receiver sought from the OCC, among other information, SARs filed by the Banks with regard to any transactions involving Capwill. Lundrigan Aff., ¶2, and Exs. 1, 2, 3, and 4 to Complaint.

Counsel for the Receiver contacted the OCC in October 2004 to inquire as to the status of the Receiver's request. Lundrigan Aff., ¶3. On or about October 20, 2004, Ford Barrett ("Mr. Barrett") from the OCC informed counsel for the Receiver that the OCC had no record of receiving the Receiver's requests, but that such requests would be denied. Lundrigan Aff., ¶4. Additionally, Mr. Barrett informed counsel for the Receiver that it was the OCC's policy to deny such requests. *Id.*  Finally, Mr. Barrett instructed counsel for the Receiver to fax the requests previously sent by mail to his attention. *Id.* Counsel for the Receiver faxed the requested information to the OCC that day. *Id.*

Thereafter, counsel for the Receiver spoke with Larry Stein ("Mr. Stein") regarding the Receiver's requests. Lundrigan Aff., ¶5. Mr. Stein informed counsel for the Receiver that the requests would be denied in their entirety. *Id.*  On December 21, 2004, the OCC issued a written response denying the Receiver's requests. Lundrigan Aff., ¶6, and Ex. 5 to Complaint.  The OCC's denial did not include a considered decision based upon the factors set forth in 12 C.F.R. § 4.33 or § 4.35; rather, the OCC's denial was a routine denial made without regard to the circumstances presented in the Receiver's request. *See OCC Interpretive Letter #1012* December 2004 (Exhibit 2 to Doc. #33) ("The OCC's position on disclosure of SARs is well known."); *see also OCC Interpretive Letter # 978* January 2004 (Exhibit 3 to Doc. #33).

The OCC claims reliance on 31 U.S.C. §5318(g)(2) and its own Rule 12 C.F.R. §21.11(k) in denying the Receiver's request.  Section 5318(g)(2) provides:

(g) Reporting of suspicious transactions,--

(1) In general,-- The Secretary may require any financial institution, and any director, officer, employee, or agent of any financial institution, to report any suspicious transaction relevant to a possible violation of law or regulation.

(2) Notification prohibited,--

(A) In general, -- if a financial institution or any director, officer, employee, or agent of any financial institution, voluntarily or pursuant to this section or any other authority, reports a suspicious transaction to a government agency—

(i) the financial institution, director, officer, employee, or agent may not notify *any person involved* in the transaction that the transaction has been reported.

(ii) no officer or employee of the Federal Government or of any State, local, tribal, or territorial government within the United States, who has any knowledge that such report was made my disclose to *any person involved* in the transaction that the transaction has been reported, other than as necessary to fulfill the official duties of such officer or employee.

31 U.S.C.A. §5318.

Section 21.11(k), promulgated by the OCC, provides:

(k) Confidentiality of SARs. SARs are confidential. Any national bank or person subpoenaed or otherwise requested to disclose a SAR or the information contained in a SAR shall decline to produce the SAR or to provide any information that would disclose that a SAR has been prepared or filed, citing this section, applicable law (e.g., 31 U.S.C. 5318(g)), or both, and shall notify the OCC.

It was in reliance upon both §5318(g)(2) and §21.11(k) that the Banks and the OCC refused to produce SARs, any information relating to a SAR, or any information regarding the policy or procedure for filing SARs.[5]

---

[5] Star did produce some limited information relating to its procedures for filing SARs in general, but did not produce any documents that would reveal whether a SAR was filed with respect to Capwill or any of his business entities.

## III.  **SUMMARY OF ARGUMENT**

The Receiver is entitled to summary judgment on his claims against the OCC.  The Receiver's Cross-Motion for Summary Judgment is based upon statutory construction and constitutional issues, which are questions of law for this Court to determine.  Congress did not authorize the OCC to implement the sweeping ban on the production of SARs as contained in §21.11(k).  The express language of §5318 provides no basis or authorization for §21.11(k).  Nor does the legislative history. The Congressional intent for the non-disclosure provision of §5318(g)(2) was to prevent a financial institution from tipping-off its customer that the customer was the subject of a suspicious activity report. There is absolutely no Congressional intent to preclude the use of SARs in civil litigation subsequent to a criminal investigation. The OCC's promulgation of §21.11(k) is a departure from its limited authority to promulgate regulations granted to the Secretary of Treasury by Congress, and it is therefore invalid and unenforceable.

The Receiver is entitled to summary judgment for the additional reason that, even if this Court accepts the OCC's interpretation of §5318 and its authority to enact the regulation at issue, the statute and/or regulation impermissibly invade the province of the judiciary and are, therefore, unconstitutional under the doctrine of separation of powers.

# IV.  <u>ARGUMENT</u>

### A. THERE ARE NO GENUINE ISSUES OF MATERIAL FACT THAT THE OCC EXCEEDED ITS DELEGATED AUTHORITY IN IMPLEMENTING 12 C.F.R. §21.11(k).

Issues of statutory interpretation and constitutionality are questions of law for the Court to decide.  *Ammex, Inc. v. U.S.*, 367 F.3d 530, 533 (6th Cir. 2004); *see also U.S. v. Robinson*, 367 F.3d 278, 290 (5th Cir. 2004) ("The constitutionality of a federal statute is a question of law…."). Summary judgment is appropriately suited for issues involving questions of law.  *Reed v. Prudential Ins. Co. of America*, 849 F.2d 1473, (6th Cir. 1988); *TeamBank, N.A. v. McClure,* 279 F.3d 614, 617 (8th Cir. 2002)   ("Because this case involves only questions of law, it is particularly appropriate for summary judgment.")   The OCC's implementation of §21.11(k) exceeded its delegated authority, and the regulation is, therefore, invalid.  There is no statutory authority for the regulation.  The Housekeeping Statute, 5 U.S.C. § 301, and 31 U.S.C. §5318 are the only potential statutory bases for §21.11(k).  Neither, however, provides the OCC with the authority to prohibit the production of SARs in civil litigation.

The Housekeeping Statute certainly does not provide the OCC with the authority to promulgate substantive rules that contradict the Federal Rules of Civil Procedure. Further, §5318(g)(2) expressly limits the disclosure of the filing of a SAR to only those **persons involved in the transaction** that is the subject of the SAR.  The legislative history establishes that Congress did not intend to preclude third-parties, such as the Receiver, from obtaining and using SARs in civil litigation.

"The 'modern view' is still subject to the well recognized rule that an administrative agency cannot exceed the specific statutory authority granted it by Congress." *Atchison, T. & S. F. Ry. Co. v. I. C. C.*, 607 F.2d 1199 (7th Cir. 1979)(*citing Campbell v. Galeno Chemical Co.*,

281 U.S. 599 (1930)); *see also Bowen v. Georgetown University Hosp.*, 488 U.S. 204 (1988). In *Campbell*, the Supreme Court succinctly stated the limits to which an agency is subject in promulgating regulations: "The limits of the power to issue regulations are well settled." *Campbell*, 281 U.S. at 610 (citing *International R. Co. v. Davidson*, 257 U.S. 506, 514 (1922)). Agency promulgated regulations such as §21.11(k) "*may not extend a statute or modify its provisions*." *Id.* (emphasis added).

Congress granted the Secretary the specific authority to require financial institutions to file SARs. It did not grant the Secretary the authority to promulgate regulations governing disclosure of SARs, and, even if it did, the statute specifically prohibits financial institutions only from *notifying the person involved in the suspicious transaction* of the filing of the SAR. 31 U.S.C. §5318(g)(2). Through regulation §21.11(k), the OCC grossly expanded the scope of the non-disclosure language of § 5318(g)(2) from the person involved in the suspicious transaction to a comprehensive ban on disclosure to *anyone* not involved in law enforcement. 12 C.F.R. §21.11(k). Section 21.11(k) exceeded and modified §5318(g)(2). The OCC, therefore, impermissibly extended the scope of its authority, and §21.11(k) is invalid and unenforceable. The Receiver is entitled to summary judgment as a matter of law.

**1. 5 U.S.C. §301, The General Housekeeping Statute, Did Not Authorize the OCC to Implement 12 C.F.R. § 21.11(k)**

Pursuant to 5 U.S.C. §301, Congress authorized federal agencies to issue "housekeeping rules" to govern how agency information will be disclosed. *Robbins v. Wilkie*, 289 F. Supp.2d 1307, 1309 (D.C. Wy. 2003). 5 U.S.C. § 301 provides:

> The head of an Executive department or military department may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property. ***This section does not authorize withholding***

> *information from the public or limiting the availability of records*
> *to the public.*

5 U.S.C. §301 (emphasis added). In *Chrysler Corp. v. Brown*, 441 U.S. 281, 310 (1979), the Supreme Court held that the Housekeeping Statute did not provide statutory authority to enact substitutive regulations.  In so holding, the Court stated that § 301 simply provided an agency the authority to regulate "its own affairs." *Id.* at 309-10.

"In recent years, several agencies have unsuccessfully attempted to find statutory authority for substantive regulations in the Housekeeping Statute." *Ex. Rel. O'Keefe v. McDonnell Douglas Corporation*, 132 F.3d 1252, 1255 (8th Cir. 1998) (citing *In re Bankers Trust Co.*, 61 F.3d 465, 470 (6th Cir. 1995); *Exxon Shipping Co. v. United State Dept. of Interior*, 34 F.3d 774, 776-78 (9th Cir. 1994); *In re Cincinnati Radiation Litig.*, 874 F. Supp. 796, 826-27 (S.D. Ohio 1995); *McElya v. Sterling Med. Inc.*, 129 F.R.D. 510, 514 (W.D. Tenn. 1990)).

Section 21.11(k) is not a regulation designed to regulate the internal affairs of the OCC. Rather, §21.11(k) is a regulation that is designed to preclude the valid use of SARs by members of the public and to override the Federal Rules of Civil Procedure. Congress amended §301 in 1958 to specifically prohibit agencies from promulgating regulations "exempting themselves from their duty to make information available to the public" by adding the language: "[t]his section does not authorize withholding information from the public or limiting the availability of records to the public."  In *NLRB v. Capitol Fish Co.*, 294 F.2d 868, 875 (5th Cir. 1961), the court held that, since 1958, the Housekeeping Statute "cannot be construed to establish authority in the executive departments to determine whether certain papers or records are privileged." *See also In re Bankers Trust*, 61 F.3d at 470 (recognizing that Congress amended §301 to remedy the situation that had developed whereby agencies were citing § 301 to keep information from the public).

- 13 -

In *In re Bankers Trust*, the Sixth Circuit was confronted with a situation very similar to that in which the Receiver found himself in the Bank Cases.  At issue in *Bankers Trust* was a Federal Reserve Board regulation that, similar to §21.11(k), prohibited banks from responding to requests for certain documents made pursuant to Rules 34 and 45 of the Federal Rules of Civil Procedure.  Like §21.11(k), the Federal Reserve regulation required litigants to seek production of requested documents from the Federal Reserve. In defending its regulation, the Federal Reserve argued that § 301 and another broadly worded statute gave it the authority to promulgate the challenged regulation. The Sixth Circuit held that Congress did not confer upon the Federal Reserve the specific authority to require a bank to ignore a discovery request made pursuant to the Federal Rules of Civil Procedure. *See also U.S. ex rel. Roby v. Boeing Co.*, 189 F.R.D. 512 (S.D. Ohio 1999)(holding that §301 does not provide a federal agency with the authority to promulgate regulations in direct contravention with the Federal Rules of Civil Procedure).

Specifically, the Sixth Circuit held:

> We likewise conclude that Congress did not empower the Federal Reserve to prescribe regulations that direct a party to deliberately disobey a court order, subpoena, or other judicial mechanism requiring the production of information. We therefore hold that the language in 12 C.F.R. §261.14 that requires a party that is served with a subpoena, order, or other judicial process to continually decline to disclose information or testimony exceeds the congressional delegation of authority and cannot be recognized by this court. Such a regulation is plainly inconsistent with Rule 34 and cannot be enforced. ***To allow a federal regulation issued by an agency to effectively override the application of the Federal Rules of Civil Procedure and, in essence, divest a court of jurisdiction over discovery, the enabling statute must be more specific than a general grant of authority as found here***. *Resolution Trust Corp.*, 145 F.R.D. at 111 (holding that the Federal Rules of Civil Procedure cannot be abrogated by agency regulations); *Merchants Nat'l Bank & Trust Co. v. United States*, 41 F.R.D. 266, 268 (D.N.D. 1966) ("While the statute gives the Secretary the right to restrict disclosure, judicial control over the evidence in a case cannot be abdicated to the caprice of executive

> officers."); *Sperandeo v. Milk Drivers & Dairy Employees Local*
> *Union No.* 537, 334 F.2d 381, 383 (10th Cir.1964) (holding that
> federal agencies are bound by discovery rules in the same manner
> as any other litigant).

*Id.* at 470 (emphasis added).

In the present case, there is no specific grant of Congressional authority upon which the OCC can rely to base its promulgation and enforcement of §21.11(k) and to prevent the Receiver from obtaining the documents requested in the Bank Cases or directly from the OCC in the present action.  The General Housekeeping Statute provides no such authority.

### 2. 31 U.S.C. §5318 Did Not Authorize the OCC to Implement 12 C.F.R. §21.11(k)

#### (a) The Express Authority Provided By 31 U.S.C. §5318

Section 5318 does not directly confer upon the OCC any rulemaking authority.  Rather, §5318 gives the Secretary of the Department of Treasury (the "Secretary") the authority to do the following:

> (a) General powers of Secretary.--The Secretary of the Treasury
> may (except under section 5315 of this title and regulations
> prescribed under section 5315)—
>
> (1) except as provided in subsection (b)(2), delegate duties and
> powers under this subchapter to an appropriate supervising
> agency and the United States Postal Service;
>
> (2) require a class of domestic financial institutions or
> nonfinancial trades or businesses to maintain appropriate
> procedures to ensure compliance with this subchapter and
> regulations prescribed under this subchapter or to guard against
> money laundering;
>
> (3) examine any books, papers, records, or other data of
> domestic financial institutions or nonfinancial trades or
> businesses relevant to the recordkeeping or reporting
> requirements of this subchapter;

- 15 -

(4) summon a financial institution or nonfinancial trade or business, an officer or employee of a financial institution or nonfinancial trade or business (including a former officer or employee), or any person having possession, custody, or care of the reports and records required under this subchapter, to appear before the Secretary of the Treasury or his delegate at a time and place named in the summons and to produce such books, papers, records, or other data, and to give testimony, under oath, as may be relevant or material to an investigation described in subsection (b);

(5) exempt from the requirements of this subchapter any class of transactions within any State if the Secretary determines that—

(A) under the laws of such State, that class of transactions is subject to requirements substantially similar to those imposed under this subchapter; and

(B) there is adequate provision for the enforcement of such requirements; and

(6) prescribe an appropriate exemption from a requirement under this subchapter and regulations prescribed under this subchapter. The Secretary may revoke an exemption under this paragraph or paragraph (5) by actually or constructively notifying the parties affected. A revocation is effective during judicial review.

Thus, the powers that Congress granted to the Secretary under §5318(a) can be summarized as follows: (i) the power to delegate duties to an agency, such as the OCC; (ii) the power to require certain financial institutions to maintain procedures to comply with §5318; (iii) the power to examine books and records of domestic financial institutions that are relevant to the recordkeeping and reporting requirements of §5318; (iv) the power to issue summons; and (v) the power to create and implement exemptions from the requirements of §5318 under specific circumstances.

Notably, through §5318, Congress did not give the Secretary the explicit authority to create and implement regulations other than as set forth in §5318(a), which does not include the

- 16 -

authority to promulgate regulations governing the disclosure of SARs or other documents.  In fact, the only authority Congress gave the Secretary to stray from the requirements of the statute was to create exemptions from compliance with §5318 in a very narrow set of circumstances. *See* 31 U.S.C. §5318(a)(5)&(6).  Even if Congress gave the Secretary the authority to promulgate regulations governing disclosure, which the Receiver disputes, that authority is limited in scope to the express language contained in §5318(g)(2). As such, §5318 does not grant the Secretary the authority to implement the complete ban on the disclosure of SARs contained in 12 CFR §21.11(k).  Therefore, *a fortiori*, the Secretary could not have delegated to the OCC the authority to implement §21.11(k). *See Brendsel v. Office of Federal Housing Enterprise Oversight*, 339 F. Supp.2d 52 (D.D.C. 2004).

In *Brendsel*, the Court was called upon to determine whether the Office of Federal Housing Enterprise Oversight ("OFHEO") had the authority to freeze employment benefits payable to the former CEO of the Federal Home Loan Mortgage Corporation ("Freddie Mac") prior to any judgment against the former CEO. OFHEO argued that its enabling statute gave it "'plenary authority' … to prohibit the payment of excessive compensation to Freddie Mac's officers and under its 'general supervisory authority' to ensure the safety and soundness of compensation agreements." *Id*. at 60. The Court found that Congress did not give OFHEO the explicit authority to effect a prejudgment attachment of employment benefits. *Id.*

As such, the Court stated that "[s]ince Congress did not explicitly provide this authority to OFHEO when it created the agency, the Court, pursuant to *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc*., 467 U.S. 837 (1984), must determine whether Congress intended to implicitly delegate this authority to OFHEO and, if so, whether OFHEO's interpretation of the statute as providing it that authority implicitly is reasonable." *Id*.

- 17 -

Congress founded OFHEO to ensure "the continued ability of [Fannie Mae] and [Freddie Mac] to accomplish their public missions [of] providing housing in the United States and the health of the Nation's economy and that more effective Federal regulation is needed to reduce the risk of failure of the enterprises." *Id.* at 61 (citing 12 U.S.C. §4501(2)).  Congress authorized the director of OFHEO to see that "the enterprises[6] are adequately capitalized and operating safely." *Id.* (citing 12 U.S.C. §4513(a)).  Within the scope of the explicit authority that Congress bestowed upon the director of OFHEO is the power to prohibit the payment of excessive compensation by the enterprises to any executive officer of the enterprises under section 4518. *Id.* (citing 12 U.S.C. §4513(b)(8))  The relevant statutory language prohibits the enterprises from providing compensation to executive officers "that is not reasonable and comparable with compensation for employment in other similar businesses ... involving similar duties and responsibilities." *Id.* (citing 12 U.S.C. §4518(a)).  Section 4518, however, did not give the director any specific enforcement authority other than to "take whatever actions he deems necessary" to see that the enterprises comply with § 4518. *Id.*  OFHEO nevertheless argued that it had "plenary authority" to take whatever actions it deemed necessary to affect the purpose of that section.  The Court held that while Subsection (a) directed OFHEO to ensure that compensation was reasonable, it did <u>not</u> grant OFHEO any enforcement authority. *Id.*  The Court therefore found that OFHEO's actions were invalid.

Both *Brendsel* and *Bankers Trust* demonstrate the courts' narrow interpretation of the authority given to an agency by statute to promulgate regulations.  In the present case, §5318(a) sets forth specific limited actions that the Secretary could delegate to the OCC. Nowhere in subsection (a) is there a grant of authority to the Secretary to delegate rulemaking authority concerning SARs. Subsection (g)(2) prohibits financial institutions from notifying only the

---

[6]     Freddie Mac and Fannie Mae are commonly referred to as Government Sponsored Enterprises or GSEs.

person involved in the suspicious transaction of the report. Nowhere within §5318 is the Secretary authorized by Congress to promulgate, or delegate the promulgation of, regulations concerning the use of SARs by third-parities in civil litigation. Thus, on its face, §5318 does not grant additional authority to expand or modify §5318(a). *See Brendsel*, 339 F. Supp.2d at 62; *see also Campbell*, 281 U.S. at 610.

Because the express language of §5318 fails to provide the OCC with authority to promulgate §21.11(k), it is unnecessary to resort to an examination of §5318(g)(2)'s legislative history. *See Brendsel*, 339 F.2d at 60-61 (citing *Chevron*, 467 U.S. 837). However, even assuming such an exercise is warranted, the legislative history of §5318(g)(2) establishes that Congress did not intend to prevent litigants, such as the Receiver, from obtaining SARs for use in civil litigation.

(b) **The Congressional Intent and Legislative History of 31 U.S.C. § 5318(g)(2)**

The legislative history of §5318(g)(2) establishes that Congress' intent when enacting that law was to prevent a financial institution from warning its customer that it had filed a suspicious transaction report. *See* Appendix, filed as Doc. #35[7]. Congress wanted to prevent the subject of the SAR from being tipped-off, which could frustrate an on-going investigation and the effectiveness of filing suspicious transaction reports. There is nothing contained within the legislative history of §5318 to suggest that the purpose is to prevent third-parties from obtaining SARs in civil litigation.

---

[7] The Appendix referenced herein was previously filed as an Appendix to the Receiver's Memorandum in Opposition to the OCC Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, and Cross-Motion for Summary Judgment, filed on May 27, 2004. The Appendix was filed as Document #35, and all references herein are to Document #35.

The codification of §5318(g)(2) began as H.R. 26[8] in the House and S. 543[9] and S.630 in the Senate. Congressman Annunzio announced the introduction of H.R. 26 on January 3, 1991. 137 Cong. Rec. H53-01 (attached as Appendix[10], Exhibit A) (hereinafter "Appx., Ex. ___")[11]  At the time that Mr. Annunzio introduced H.R. 26 it did not contain any language similar or analogous to §5318(g)(2). *Id.*  Senator Riegle introduced S. 543 on March 5, 1991. 137 Cong. Rec. S2619-02 (Appx., Ex. B). At that time, S. 543 did not contain any language similar or analogous to §5318(g)(2). *Id.* Senator D'Amato announced the introduction S.630 on March 12, 1991. 137 Cong. Rec. S3021-02 (Appx., Ex. C).

At the time that Mr. D'Amato introduced S.630, it contained Section 7, which was very similar to what eventually became §5318(g)(2). *Id.* In describing the intent and purpose of each proposed section, Mr. D'Amato stated that Section 7 of the proposed bill would authorize the "Treasury Secretary to require by regulation the reporting of suspicious transactions by any financial institution subject to the Bank Secrecy Act. ***A financial institution, bank or nonbank, would also be prohibited from warning its customer if it made a suspicious transaction report.***" *Id.*[12]  (emphasis added)

The actual proposed language of Section 7 of S.630 stated:

---

[8]    *See* 139 Cong. Rec. E57-02.  While comments made by a legislator after enactment of a statute are not considered when divining Congressional intent, (*Ratzlaf v. U.S.*, 510 U.S. 135 (1994)), this reference to Mr. Annunzio's 1992 letter is simply to aid in identifying the various versions of the bills that resulted in §5318(g)(2).

[9]    *See U.S. v. $633,021.67 in U.S. Currency*, 42 F. Supp. 528 (N.D.Ga., 1993), wherein the Court noted that S. 543 was part of the legislative history of §5318(g)(2).

[10]    Due to the voluminous nature of the bills and Congressional Record comprising the legislative history of §5318(g)(2), the Receiver is providing the Court with an Appendix that contains the first page of the cited document and an excerpt from that document containing the relevant language.  Westlaw citations are provided where available.  Where Westlaw citations are not available, the Receiver is providing excerpts from the Library of Congress' electronic document service: http://thomas.loc.gov.  The Appendix was filed as Document #35.

[11]    While §5318(g)(2) was not passed during this session of Congress, it is proper to look to previous Congressional hearings when considering legislative intent. *Dawson Chemical Co. v. Rohm and Haas Co.*, 448 U.S. 176 (1980) (Court considered four years of Congressional hearings for "full understanding" of  legislative intent).

[12]    Statements made by a sponsor of a bill may be considered when determining legislative intent so long as such statements do not contradict the enacted text of the bill. *Pan Am. World Airways, Inc. v. C. A. B.*, 380 F.2d 770 (2d Cir. 1967); *City of New York v. Train*, 494 F.2d 1033 (D.C. Cir. 1974)

- 20 -

> (2) A financial institution may not notify any person involved in
> the transaction that the transaction has been reported.

The section-by-section analysis attached to the proposed bill explained that this language was added to the proposed bill on the recommendation of the Financial Action Task Force ("FATF"), which had recommended to the Senate that the bill contain language that prohibited "a financial institution, bank or non-bank, [from] warning its customer if it made a suspicious transaction report." *Id.*

On May 23, 1991, H.R. 26 emerged from committee containing language that was very similar to S.630, and stated:

> SEC. 29 PROHIBITION ON DISCLOSURE OF SUSPICIOUS
> TRANSACTION REPORTS.
>
> Section 5318 of title 31, United States Code, is amended by adding
> at the end the following new subsection:
>
> "(g) NONDISCLOSURE OF SUSPICIOUS TRANSACTION
> REPORTS. – If any financial institution or any officer, director,
> employee, or agent or any financial institution provides
> information described in the second sentence of section 1103 (c) of
> the Right to Financial Privacy Act which may be relevant to a
> possible violation of this subchapter or section 1956, 1957, or 1960
> of title 18 to the Secretary or any appropriate supervisory agency,
> the fact that such information has been provided to the Secretary,
> the Attorney General, or the agency may not be disclosed, directly
> or indirectly, by the financial institution or any officer, director,
> employee, or agent of the financial institution ***to any person
> named in or otherwise the subject of*** the information provided to
> the Secretary or agency except as prescribed by the Secretary."

137 Cong. Rec. H4192-04 (Appx., Ex. D) (emphasis added).  The version of H.R. 26 containing the above-language was passed by the House and referred to the Senate for consideration on June 11, 1991. 137 Cong. Rec. H4192-04 (Appx., Ex. E)

On October 1, 1991, S. 543 emerged from committee containing the following language:

- 21 -

SEC. 927. SUSPICIOUS TRANSACTIONS AND FINANCIAL INSTITUTION ANTI-MONEY LAUNDERING PROGRAMS.

`(g) REPORTING OF SUSPICIOUS TRANSACTIONS-

`(1) IN GENERAL- The Secretary may require financial institutions to report suspicious transactions relevant to possible violation of law or regulation.

`(2) NOTIFICATION PROHIBITED- A financial institution that voluntarily reports a suspicious transaction, or that reports a suspicious transaction pursuant to this section or any other authority, may not notify any person involved in the transaction that the transaction has been reported.

S.Rep. 102-167 (Appx., Ex. F).  On November 13, 1991, Mr. D'Amato stated that the intent of the language added to S.543 as Section 927 was "in furtherance of the FATF recommendations, a financial institution, bank or non-bank, would be prohibited under §5318(g)(2) from warning its customer if it made a suspicious transaction report (recommendation 17)." 137 Cong. Rec. S16640-01 (Appx., Ex. G).  The Senate passed S. 543 with the above-language on November 21, 1991 and sent S.543 to the House.  137 Cong. Rec. D1479-02 (Appx., Ex. H).  The House removed Section 927 from S.543, which contained the language pertaining to §5318(g)(2) and enacted S.543 as Public Law No. 102-242 on December 19, 1991. *See* H.Rep. 102-330, PL 102-242, 1991 S543 (Appx., Ex. I).  Thus, the first session of the 102nd Congress ended without any of the proposed amendments to §5318 being enacted.

Congress, however, continued work on §5318(g)(2) during its second session.  During the second session of Congress, S. 2733, H.R. 6048 and H.R. 5334 were the relevant bills with respect to §5318(g)(2).  On May 15, 1992, Mr. Riegle submitted a report from the Senate Committee on Banking, Housing & Urban Affairs that included S. 2733.  138 Cong. Rec. D590-02 (Appx., Ex. J).  This initial version of S. 2733 did not contain any language similar or

analogous to §5318(g)(2). *Id.*  On June 5, 1992, H.R. 5334 was introduced.  138 Cong. Rec. H4333-11 (Appx., Ex. K). As with S. 2733, H.R. 5334 did not include any language similar or analogous to §5318(g)(2). *Id.*  The Senate passed S. 2733 on July 1, 1992, by which time it included proposed amendments to §5318, that stated:

> SEC. 1027. SUSPICIOUS TRANSACTIONS AND FINANCIAL INSTITUTION ANTI-MONEY LAUNDERING PROGRAMS.
>
> `(g) REPORTING OF SUSPICIOUS TRANSACTIONS-
>
> `(1) IN GENERAL- The Secretary may require financial institutions to report suspicious transactions relevant to possible violation of law or regulation.
>
> `(2) NOTIFICATION PROHIBITED- A financial institution that voluntarily reports a suspicious transaction, or that reports a suspicious transaction pursuant to this section or any other authority, may not notify any person involved in the transaction that the transaction has been reported.

138 Cong. Rec. D829-02 (Appx., Ex. L).

On September 28, 1992, Mr. Annunzio introduced H.R. 6048 in the House, which included Section 207 that provided:

> SEC. 207. SUSPICIOUS TRANSACTIONS AND FINANCIAL INSTITUTION ANTI-MONEY LAUNDERING PROGRAMS.
>
> `(g) REPORTING OF SUSPICIOUS TRANSACTIONS-
>
> `(1) IN GENERAL- The Secretary may require any financial institution, and any director, officer, employee, or agent of any financial institution, to report any suspicious transaction relevant to a possible violation of law or regulation.
>
> `(2) NOTIFICATION PROHIBITED- A financial institution, and a director, officer, employee, or agent of any financial institution, who voluntarily reports a suspicious transaction, or that reports a suspicious transaction pursuant to this section or any other authority, may not notify any person involved in the transaction that the transaction has been reported.

138 Cong. Rec. H9641-07 (Appx., Ex. M).

Thus, by September 28, 1992, both the House and Senate versions of the proposed amendments to §5318 were identical.  On September 29, 1992, Mr. Annunzio explained that H.R. 6048 was a compromise between H.R. 26 and S. 2733. 138 Cong. Rec. H9802-01, H9811 (Appx., Ex. N). These two versions[13] of proposed amendments to §5318 were included in H.R. 5334 during a House/Senate conference. *See Lopez v. First Union Nat. Bank*, 931 F. Supp. 860 (S.D.Fla. 1996).

H.R. 5334 became Public Law No. 102-550, and included an amendment to §5318, that stated:

> (2) Notification Prohibited. – A financial institution, and a director, officer, employee, or agent of any financial institution, who voluntarily reports a suspicious transaction, or that reports a suspicious transaction pursuant to this section or any other authority, may ***not notify any person involved in the transaction*** that the transaction has been reported.

31 U.S.C.A. §5318(g)(2) (West 1993)(emphasis added).

This provision of §5318(g)(2), limiting the prohibition on disclosure of SARs to persons involved in the suspicious transaction, has remained unchanged since its original codification. Since the time that it enacted §5318(g)(2), Congress has amended that subsection four times. *See Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism (USA Patriot Act) Act of 2001, Pub. L. No. 107-56; Fair and Accurate Credit Transactions Act of 2003, Pub. L. No. 108-159; Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. 108-458; Riegle Community Development and Regulatory Improvement*

---

[13] In an exhibit to the Conference Report for H.R. 5334, Nicholas Brady, the then Secretary of Treasury, acknowledged that H.R. 5334 contained many of the anti-money laundering provisions of H.R. 26 and S. 543. 138 Cong. Rec. S17904-02, S17917. (Appx., Ex. 0)

Act of 1994, PL 103-325.  The only change to subsection (g)(2) occurred in 2001.  In 2001, the

language of subsection (g)(2) was changed from:

> **(2) Notification prohibited.**—A financial institution, and a director, officer, employee, or agent of any financial institution, who voluntarily reports a suspicious transaction, or that reports a suspicious transaction pursuant to this section or any other authority, may not notify any person involved in the transaction that the transaction has been reported.

to:

> **(2) Notification prohibited. –**
>
> > **(A) In general. –** If a financial institution or any director, officer, employee, or agent of any financial institution, voluntarily or pursuant to this section or any other authority, reports a suspicious transaction to a government agency –
> >
> > > **(i)** the financial institution, director, officer, employee, or agent may not notify any person involved in the transaction that the transaction has been reported; and
> > >
> > > **(ii)** no officer or employee of the Federal Government or of any State, local, tribal, or territorial government within the United States, who has any knowledge that such report was made may disclose to any person involved in the transaction that the transaction has been reported, other than as necessary to fulfill the official duties of such officer or employee

Thus, the only change to subsection (g)(2) in the past ten years has been to impose the duty of

non-disclosure, formerly on only financial institutions, upon governmental employees.

Significantly, Congress ***did not*** increase the scope of the ban on disclosure from the person

involved in the suspicious transaction to anyone else.

The legislative history of § 5318(g)(2) establishes that Congress did not intend to provide

the OCC with sweeping power to prohibit the disclosure of SARs to anyone other than a person

- 25 -

involved in the suspicious transaction.[14] "[A]n administrative agency's power to regulate must always be grounded in a valid grant of authority from Congress." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 161 (2000). "Where Congress knows how to say something but chooses not to, its silence is controlling." *In re Griffith*, 206 F.3d 1389, 1394 (11th Cir. 2000) (en banc).

Because the OCC can not rely upon §301, §5318(g)(2) or the legislative history of §5318(g)(2) for any valid authority to promulgate and enforce § 21.11(k), that agency rule is invalid and can not preclude the Receiver from obtaining the documents requested in the Bank Cases or in the present case.

**B.**   **THERE ARE NO GENUINE ISSUES OF MATERIAL FACT THAT 12 C.F.R. §21.11(k) VIOLATES THE SEPARATION OF POWERS DOCTRINE OF THE FEDERAL CONSTITUTION**

The Receiver is entitled to summary judgment for the additional reason that, if this Court accepts the OCC's interpretation of §5318 and its authority to enact the regulation at issue, the statute and/or regulation impermissibly invade the province of the judiciary and are, therefore, unconstitutional under the doctrine of separation of powers.  In *Bankers' Trust,* the Sixth Circuit held that a Federal Reserve Board regulation that precluded discovery of information about bank examinations was unenforceable because it exceeded the authority of the Federal Reserve under its enabling statute, and was inconsistent with Rule 34 of the Federal Rules of Civil Procedure.

---

[14]    In *Weil v. Long Island Sav. Bank*, 195 F.Supp.2d 383, 388-89 (E.D.N.Y. 2001), the Court addressed a substantially similar regulation promulgated by the Office of Thrift Supervision which prohibited the disclosure of SARs.  The Court purported to examine the legislative history in making its determination that the regulation was authorized by §5318.  However, the court only examined the history of the amendment to the regulation and OTS' opinion of the authority provided to it.  *It failed to examine the legislative history of §5318 as required by Chevron*.  The case, therefore, provides no support for the OCC's authority to issue §21.11(k), and *Weil* is certainly not binding upon this Court.  In justifying its decision, the *Weil* court noted that disclosure to persons other than the subject of the SARs could increase the likelihood that the person who is the subject of the SAR would find out about the report.  However, any such concern can be alleviated through a protective order, such as those already in place in the Bank Cases.

*In re Bankers Trust Co.*, 61 F.3d 465 (6th Cir. 1995). In addition to exceeding its statutory authority, Chief Judge Merritt also pointed out in his concurring opinion that the regulation was likely unconstitutional because it invaded the province of the judiciary in violation of the constitutional principle of separation of powers. *Id.* at 472-73.

The OCC regulation at issue, §21.11(k), raises these same constitutional concerns. As set forth more fully below, the Receiver believes that proper application of the constitutional doctrine of separation of powers requires a finding that either the regulation is unenforceable (Part 1 below), or that both the statute and regulation are unconstitutional (Part 2).

1. **This Court Should Construe §5318 in a Manner Which Does not Interfere with the Power and Province of the Judiciary to Control Discovery; Construction of §5318 in a Constitutional Manner Requires A Finding that the OCC's Regulation is Unenforceable.**

When the constitutionality of a statute is challenged, it is the duty of the court to first attempt to interpret the statute in a constitutional manner. Where possible, "Federal statutes are to be so construed as to avoid serious doubt of their constitutionality. When the validity of an act of Congress is drawn in question, and even if a serious doubt of constitutionality is raised, it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided." *Concrete Pipe and Products of California, Inc. v. Construction Laborers Pension Trust for Southern California*, 508 U.S. 602, 629 (1993) (internal citation omitted); *see also Hadix v. Johnson*, 144 F.3d 925 (6th Cir. 1998) (applying this principle and rejecting interpretation of statute that would render statute unconstitutional as intrusion into judiciary, and accepting interpretation that allowed judicial discretion to remain intact).

In *Merchants Nat. Bank & Trust Co. of Fargo v. U. S.*, 41 F.R.D. 266 (D.N.D. 1966), the court was confronted with an agency regulation substantially similar to the one at issue here, and

an enabling statute which, in contrast to §5318(a) and (g)(2), actually provided the agency with specific authority to promulgate regulations governing disclosure of certain documents. Therein, the government refused to disclose documents in reliance upon the Social Security Act and regulations promulgated by the Secretary of Health, Education, and Welfare under that Act.  The Act, 42 U.S.C. 1306, provided:

> No disclosure of any return or portion of a return * * * or of any file, record, report or other paper, or any information, obtained at any time by the Secretary of Health, Education, and Welfare * * * or by any officer or employee of the Department of Health, Education, and Welfare * * * in the course of discharging their respective duties under this chapter, * * * shall be made except as the Secretary of Health, Education, and Welfare * * * may by regulations prescribe.  *Id.* at 268.

The Secretary in turn prescribed regulations that provided:

> Any request or demand for any such file, record, report, or other paper, or information, disclosure of which is forbidden by this part, shall be declined upon authority of the provisions of section 1106 of the Social Security Act, and this part prescribed thereunder. If any officer or employee of the Department is sought to be required, by subpoena or other compulsory process, to produce such file, record, report, or other paper, or give such information, he shall respectfully decline to present such file, record, report, or other paper, or divulge such information, basing his refusal upon the provisions of law, and this part prescribed thereunder.  *Id.*

The question presented to the court was whether the Secretary could, by regulation, prevent the production of documents in his care, custody and control, when the plaintiff had made a request for the production of the documents pursuant to Rule 34.  *Id.*  The Court held that the Secretary could not restrict such disclosure, and construed the statute in a manner that would not interfere with the judiciary's right to control discovery. "While the statute gives the Secretary the right to restrict disclosure, **'*Judicial control over the evidence in a case cannot be abdicated to the caprice of executive officers.*'**" *Id.* (quoting *United States v. Reynolds*, 345 U.S. 1 (1953))

- 28 -

(emphasis added). The court construed the statute and held that it did not apply to disclosure "pursuant to discovery proceedings under the Federal Rules of Civil Procedure and subject to supervision by the Court." *Id.* The court noted that, by protective order, the court could limit the use of the information as appropriate and prevent its public disclosure. *Id.* The court accordingly denied the government's motion to amend the court's order requiring it to produce the documents. *Id.*

This Court should apply this principle here. As set forth in detail in Section A above, §5318(g)(2) only prohibits financial institutions and government employees from *notifying the person involved in the transaction* that the transaction has been reported.  The statute does *not* purport to authorize persons to refuse to disclose information in a judicial proceeding, nor does it permit the Secretary, and thus the OCC, to promulgate regulations governing disclosure of SARs, much less in judicial proceedings. In fact, §5318 says *nothing* about disclosure in judicial proceedings.  This Court should construe the statute in accordance with its express language, and interpret the statute as prohibiting disclosure *only* to persons involved in the transaction reported, and, as in *Merchants Bank*, inapplicable to judicial proceedings under court supervision, as here. The Court can control further disclosure of these documents through the protective order already in place in the Bank litigation, or through a protective order between the parties to this action.

The OCC purports to rely upon §5318 as the authority for its regulation §21.11(k) governing the disclosure of SARs.[15] However, interpretation of §5318 in a constitutional manner as set forth above leads to the inescapable conclusion that this regulation promulgated by the OCC, which purports to prohibit *all* disclosures of information, *including in judicial*

---

[15]    12 CFR 21.11(k): Confidentiality of SARs. SARs are confidential. Any national bank or person subpoenaed or otherwise requested to disclose a SAR or the information contained in a SAR shall decline to produce the SAR or to provide any information that would disclose that a SAR has been prepared or filed, citing this section, applicable law **(e.g., 31 U.S.C. 5318(g)),** or both, and shall notify the OCC. (emphasis added)

- 29 -

*proceedings*, and which in fact directs persons to disobey subpoenas and other discovery devices,

exceeds the OCC's authority under the express language of the enabling statute and is, therefore,

unenforceable.  *See* also Section A, *supra.*

> **2.      If the Court Determines that Congress Intended, Through §5318, to Prohibit the Disclosure of SARs in Judicial Proceedings, Both the Statute and the Regulation Impermissibly Invade the Province of the Judiciary and are Unconstitutional Under the Doctrine of Separation of Powers.**

If this Court determines that Congress intended, through §5318, to authorize the OCC to

promulgate regulations prohibiting the disclosure of SARs in judicial proceedings, which the

Receiver strongly disputes, the constitutional question of separation of powers cannot be

avoided, and both §5318 and regulation §21.11(k) should be declared unconstitutional and

unenforceable as impermissible invasions into the province and power of the judiciary. These

separation of powers concerns are precisely what Chief Judge Merritt was referencing in his

concurring opinion in *Bankers Trust*.  Chief Judge Merritt stated:

> I concur in full in the court's opinion, but I would point out an additional consideration. **Even if Congress had given the Federal Reserve Board specific statutory authority--which it certainly has not--to withhold documents that contain "confidential supervisory information" under whatever circumstances the Board deems appropriate (including a situation when a federal court had issued a Rule 37 discovery order), it is questionable whether such a statute would be constitutional.** The Supreme Court has indicated that delegations of rulemaking authority to Article I agencies may implicate separation of powers concerns. *See Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). As the Supreme Court has noted "we have not hesitated to strike down provisions of a law that ... undermine the authority and independence of one or another coordinate Branch." *Mistretta v. United States,* 488 U.S. 361, 382, 109 S.Ct. 647, 660, 102 L.Ed.2d 714 (1989). As Justice Brennan has observed, **"A Judiciary free from control by the Executive and Legislature is essential if there is a right to have claims decided by judges who are free from potential domination by other branches of government."**

> *Marathon*, 458 U.S. at 58, 102 S.Ct. at 2865 (plurality opinion) (*quoting United States v. Will*, 449 U.S. 200, 217-18, 101 S.Ct. 471, 482, 66 L.Ed.2d 392 (1980)). **If Congress were to limit a federal district judge's authority to order discovery according to the interest of the Federal Reserve, the ability of a federal court to perform its most basic function of deciding "cases and controversies" under Article III of the Constitution would be notably impaired. Courts cannot fairly decide cases if they cannot have access to the information needed for a fair, objective decision. Even when National Security is at stake, federal courts still review documents to determine whether disclosure is warranted**. *See* 18 U.S.C.App. §§ 1-16 (1994) (Classified Information Procedures Act).

61 F.3d at 472-73 (emphasis added). The District Court for the Southern District of Ohio has echoed this concern, and cited Chief Justice Merritt's concurring opinion, in a decision refusing to allow the Department of Defense to assert regulations which purported to prohibit former employees from testifying in a federal action. *U.S. ex rel. Roby v. Boeing Co*., 189 F.R.D. 512, 516 (S.D. Ohio 1999).

The OCC's regulation purports to deem SARs confidential, and requires banks or persons subpoenaed or requested to disclose a SAR to *decline to produce the SAR or any other information that would disclose that a SAR has been prepared or filed.* 12 CFR §21.11(k). In other words, the OCC has deemed itself above the law, usurped the power of Article III courts to regulate discovery pursuant to the Civil Rules, and has directed persons in possession of SARs to disobey validly issued subpoenas and other discovery devices. The regulation is a blatant and unconstitutional invasion into the power and province of the judiciary, and §5318(g)(2) is likewise unconstitutional if this Court determines that the statute provides the OCC with the authority to promulgate this regulation. Through the regulation, an agency of the executive branch of government has attempted to usurp control and divest the judiciary of its power and

- 31 -

right to control discovery. This invasion is at the heart of what Article III and the doctrine of separation of powers are designed to protect against.

Article III of the Constitution "both defines the power and protects the independence of the Judicial Branch."  *Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 58 (1982):

> Basic to the constitutional structure established by the Framers was their recognition that "[t]he accumulation of all powers, legislative, executive, and judiciary, in the same hands, whether of one, a few, or many, and whether hereditary, self-appointed, or elective, may justly be pronounced the very definition of tyranny." The Federalist No. 47, p. 300 (H. Lodge ed. 1888) (J. Madison). To ensure against such tyranny, the Framers provided that the Federal Government would consist of three distinct Branches, each to exercise one of the governmental powers recognized by the Framers as inherently distinct. "The Framers regarded the checks and balances that they had built into the tripartite Federal Government as a self-executing safeguard against the encroachment or aggrandizement of one branch at the expense of the other." *Buckley v. Valeo*, 424 U.S. 1, 122, 96 S.Ct. 612, 683, 46 L.Ed.2d 659 (1976) (*per curiam* ).
>
> The Federal Judiciary was therefore designed by the Framers to stand independent of the Executive and Legislature--to maintain the checks and balances of the constitutional structure, and also to guarantee that the process of adjudication itself remained impartial. *Id.* at 57-58.

The Framers recognized that a judiciary free from interference by any other branch of government was essential. The fundamental principle enunciated by the Constitution is that "the 'judicial Power of the United States' must be reposed in an independent Judiciary. It commands that the independence of the Judiciary be jealously guarded, and it provides clear institutional protections for that independence." *Id.* at 60 (concluding that the Bankruptcy Act of 1978 violated Article III of the Constitution); *see also Merchants Nat. Bank*, 41 F.R.D. 266 (holding that statute and agency regulation could not divest judiciary of control over discovery and

- 32 -

evidence). One branch of the Government may not intrude upon the central prerogatives of another, and one branch may not impair another in the performance of its constitutional duties. *Loving v. U.S.*, 517 U.S. 748, 757 (1996).

Courts that have considered the question whether the Rules of Civil Procedure governing discovery in federal court can be abrogated by agency regulations have uniformly answered the query in the negative. *Resolution Trust Corp. v. Deloitte & Touche*, 145 F.R.D. 108, 111 (D. Colo. 1992) (citing *United States v. Reynolds,* 345 U.S. 1, 9-10 (1953) ("Judicial control over the evidence in a case cannot be abdicated to the caprice of executive officers."); *Sperandeo v. Milk Drivers & Dairy Employees Local Union No. 537,* 334 F.2d 381, 383 (10th Cir. 1964) (Federal agencies are bound by the discovery rules in the same manner as any other litigant.); *Forstmann Leff Associates, Inc. v. American Brands, Inc.,* 1991 WL 168002 (S.D.N.Y. 1991) ("[W]hile section 510.5(b) permits the OTS to withhold documents from disclosure on the basis of privilege, it is the court's function to determine whether such documents must be produced."). Nor may statutes enacted by Congress intrude upon the judiciary's right to rule on, decide, and control cases before it. *See Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 218-19 (1995) (Congress may not revise judicial determinations by retroactive legislation reopening judgments); *Merchants Nat'l Bank and Trust Co. of Fargo v. United States,* 41 F.R.D. 266, 268 (D.N.D. 1966) ("While the statute gives the Secretary the right to restrict disclosure, 'Judicial control over the evidence in a case cannot be abdicated to the caprice of executive officers.' ").

In *Plaut*, the Supreme Court examined the constitutionality of §27A(b) of the Exchange Act, which purported to retroactively change the statute of limitations applied to securities claims, and found that it violated the principle of separation of powers and was, therefore, unconstitutional. *Id.* at 217-18. The Court stated that Article III gives the federal judiciary "the

power, not merely to rule on cases, but to *decide them*." *Id.* at 218-19. Because §27A(b) interfered with the judiciary's power to decide cases, the Court found that Congress had "exceeded its authority by requiring the federal courts to exercise '[t]he judicial Power of the United States,' U.S. Const., Art. III, §1, in a manner repugnant to the text, structure, and traditions of Article III." *Id.* at 217-18.

The same is true here. The OCC regulation at issue invades this Court's ability to decide and rule upon the Bank Cases. The regulation interferes with a federal court's ability to perform its most basic and central function of deciding cases and controversies under Article III. *See Bankers Trust*, 61 F.3d at 472-73; *Plaut*, 514 U.S. 217-18. By limiting a court's ability to access information needed for deciding and ruling upon cases, the regulation impairs the judiciary's ability to fairly perform its most basic functions. *Id.*

Federal agencies are not above the law, and are, in fact, bound by the discovery rules of the Federal Rules of Civil Procedure like every other litigant. *Sperandeo v. Milk Drivers and Dairy Emp. Local Union No. 537,* 334 F.2d 381, 384 (Colo. 1964). Agencies certainly have no absolute right to refuse to produce documents or information in response to a valid subpoena or other discovery device. Even where a claim of privilege is asserted by the governmental agency or executive branch, it is for the court to determine whether the documents sought to be withheld are entitled to the protection of the privilege. *Id.* at 384-85. As noted by Chief Judge Merritt, even when national security is at stake, federal courts are entitled to determine whether information should be disclosed. *Bankers Trust,* 61 F.3d at 472-73.

There is not even a privilege upon which the OCC could rely here. The bank examination or deliberative process privilege upon which the OCC has relied in other actions is inapplicable here. The privilege is qualified rather than absolute, and protects only agency opinions and

recommendations from disclosure.  *In re Bankers Trust Co*., 61 F.3d at 471.  It does not protect factual matters.  The SARs sought by the Receiver here do not fall within this privilege because: (1) they contain purely factual matters; (2) they do not contain agency opinions and recommendations; and (3) the reports are completed by financial institutions, and not the OCC. Nor does §5318 purport to create a privilege from discovery in favor of the OCC or banks. Likewise, so called *Touhy* regulations, promulgated pursuant to the federal Housekeeping statute, 5 U.S.C. §301, do not create a privilege from the judicial discovery process.  *Exxon Shipping Co.,* 34 F.3d at 776-77;  5 U.S.C. §301 ("This section does not authorize withholding information from the public or limiting the availability of records to the public.")

Rather, the regulation at issue purports to create an absolute right to refuse to engage in discovery and require others to disobey valid discovery devices, and attempts to completely divest the judiciary of any power to require production of SARs.  In short, the regulation, and §5318(g)(2) to the extent it authorizes the OCC to promulgate the regulation, impermissibly invade the central function of the judiciary, and are, accordingly, unconstitutional and unenforceable.

## V.  <u>CONCLUSION</u>

The OCC's promulgation and enforcement of §21.11(k) exceeded the authority Congress granted the Secretary of Treasury and is therefore invalid.  Additionally, §21.11(k) is unconstitutional to the extent that it purports to trump the authority of Article III courts to control discovery through the Rules of Civil Procedure.  As a result, the Receiver is entitled to summary judgment as a matter of law on its claims against the OCC.  The Receiver respectfully requests that the Court grant his Cross-Motion for Summary Judgment, and issue an Order requiring the OCC to produce the documents requested by the Receiver.

Respectfully submitted,


s/Richard S. Wayne
RICHARD S. WAYNE (0022390)
THOMAS P. GLASS (0062382)
NICOLE M. LUNDRIGAN (0075146)
STRAUSS & TROY, L.P.A.
The Federal Reserve Building
150 East Fourth Street
Cincinnati, OH 45202-4018
513.621.2120
513.629.9426 (fax)
E-mail: rswayne@strausstroy.com

Attorney for Plaintiff
William T. Wuliger, Receiver
in KeyBank and Liberty Bank cases


s/Wallace A. Showman
WALLACE A. SHOWMAN
E-mail: was@showmanlaw.com
WALLACE A. SHOWMAN LLP
1350 Avenue of the Americas, 29th Floor
New York, NY 10019
212.265.8600
212.581.8958 (fax)

Attorney for Plaintiff
William T. Wuliger, Receiver
in KeyBank, Liberty Bank, and Star Bank cases

## Certificate of Service

The undersigned hereby certifies that the foregoing was filed via this Court's Electronic

Filing System, and served upon all parties of record, this 2nd day of June, 2005.

s/Richard S. Wayne


045688.880.607356_1.DOC